IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JERIMIAH L. VANCE, | ) | |
| Petitioner, | ) | 8:18CV367 |
| v. | ) | |
| STATE OF NEBRASKA, | ) | MEMORANDUM AND ORDER |
| Respondent. | ) | |

Mr. Vance (Vance or Petitioner) has filed a petition for a writ of habeas corpus attacking his state conviction and sentence for sexually assaulting a very young girl. Finding and concluding that most of his claims have been procedurally defaulted without excuse, and as for a portion of one claim that was not defaulted, the deference due the state courts compels rejection of those claims, I now deny and dismiss the petition with prejudice.

### *The Offenses and the Trial*

In a highly condensed fashion, I first describe the offenses of conviction. In October 2009, Vance and Amanda S. began a dating relationship. Their relationship progressed to the point that Vance began living on occasion with Amanda and her four children. On February 17, 2012, Amanda's 4-year-old daughter A.S. complained to her mother of pain in her "butt." H.S., Amanda's son and A.S.'s twin brother, made a statement which led Amanda to question A.S. as to whether "someone had put a pee pee in her butt." A.S. denied this had occurred approximately 8 to 10 times before she admitted that it had occurred and began crying. The hospital found no evidence of trauma.

On February 22, 2012, investigators visited Amanda's apartment to collect evidence. The investigators took pictures as they entered the apartment, focusing on

A.S.'s bedroom and the path through the apartment leading to the bedroom. A.S. and H.S. shared a bedroom in the apartment, and their beds were bunked. H.S. slept in the top bunk, and A.S. slept on the bottom. In addition to taking pictures, they collected A.S.'s bedding for DNA and serology testing. The bedding consisted of a cotton-like mattress pad, a brown fitted sheet, a brown flat sheet, a cream-colored comforter, and a pink heart-patterned quilt.

The State Patrol crime laboratory received the bedding on March 1, 2012. Testing was not completed until August 2012. On January 2, 2013, an investigator collected a buccal swab from Vance. Heidi Young, a forensic scientist in the biology unit at the State Patrol crime laboratory, completed the DNA and serology tests on A.S.'s bedding. Young discovered three stains on the bedding that contained sperm: two from the heart-patterned quilt and one from the cream-colored comforter. These stains were in the bottom corners of each piece of bedding. Each of these stains tested as containing sperm, and Young's analysis revealed that the odds of Vance not having been the source of these stains were astronomically remote.

A.S. testified[1] that Vance used to stay at their house and that she was in court because Vance had done something bad to her. At the outset of her testimony, A.S. was presented with basic diagrams of a young girl and an adult male. Upon questioning, A.S. was able to identify the various body parts on each diagram. A.S. testified that Vance put his finger in her "toki [vagina]" and put his "pee pee in her butt." A.S. described feeling pain when Vance put his finger in her "toki," but testified that she felt nothing when he put his "pee pee in her butt." She also stated that she and

---

[1] By the time of trial, it appears that the victim would have been at least five and possibly six years of age. *See, e.g., United States v. Frazier*, 678 F. Supp. 499 (E.D. Pa.) (Four-year-old sexual assault victim was competent to testify regarding the incident, despite her age and incident's occurrence 14 months prior), *aff'd*, 806 F.2d 255 (3d Cir. 1986). Both before she testified in front of the jury and while she testified in front of the jury the extremely experienced trial judge actively satisfied himself that despite her young age she was competent to testify. More about that in a moment.

H.S. shared a room when Vance did these things to her, but that she believed H.S. did not observe anything because he was asleep.

A.S. testified that Vance would come into her room at night, lay in her bed, and pull her pants down. Vance's clothes would also be partly off. When Vance did these things to her, A.S. noticed that the bed would get all wet. A.S. could not remember how old she was when Vance did these things to her.

Following a jury trial that began on October 7, 2013, where many additional facts and witnesses were presented[2], Vance was convicted of aggravated first and third degree sexual assault. He was sentenced to concurrent prison sentences of 40 to 70 years and 4 to 5 years.

### *The Direct Appeal*

Vance appealed his convictions and sentences. At trial, Petitioner was represented by a local public defender. The local public defenders' office handled the appeal too.

Vance raised eight reasons for reversal. He argued the trial court erred as follows: (1) in permitting the State to designate the lead investigator as a representative throughout the trial, despite a sequestration order; (2) in overruling his motion for mistrial after a potential juror had disclosed for the first time that she had been the victim of a sexual assault; (3) in allowing the victim to testify when she was not competent; (4) in failing to strike the testimony of the victim when she became

---

[2] For example, a clinical psychologist testified, the medical director at the Child Advocacy Center and a pediatrician testified, a forensic scientist testified, the child's mother testified, Vance's sister testified, Vance's friend testified, and the forensic interviewer who had first interviewed A.S. when A.S. failed to disclose that Vance abused her testified.

-3-

unavailable for cross-examination (because of her incompetency as evidenced by her failure to remember certain details); (5) in permitting the State to introduce the hearsay statement of the victim; (6) in failing to declare a mistrial after the prosecutor misstated evidence during closing arguments; (7) in finding sufficient evidence to sustain the jury's verdicts; and (8) in imposing excessive sentences. *State v. Vance*, No. A-14-009, 2015 WL 240854 (Neb. Ct. App., January 20, 2015); filing no. 10-11 at CM/ECF 5.

The Nebraska Court of Appeals issued a detailed opinion. (*Id.*) It affirmed Vance's conviction and sentences finding no merit to the eight assignments of error. Regarding the assignments of error about the child–allowing the victim to testify when she was not competent, failing to strike the testimony of the victim when she became unavailable for cross-examination (because of her incompetency as evidenced by her failure to remember certain details) and in permitting the State to introduce the hearsay statement of the victim–the Court of Appeals very carefully examined those issues and concluded that they were without permit.

As for the competency issue, the Court of Appeals ruled that:

> Vance also argues that the district court erred when it determined that A.S. was competent to testify. Vance takes issue with this determination because he believes an objective review of her testimony reveals that A.S. had very little ability to recollect her experiences and then testify to those experiences. Vance claims that A.S.'s incompetence requires this court to vacate his convictions.
>
> While no certain age has been deemed to be the age at which a child becomes competent to testify in a court of law, the court generally takes into consideration whether he or she is able to receive correct impressions by the senses, to recollect and narrate accurately, and to appreciate the moral duty to tell the truth. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997). In *Earl*, the Nebraska Supreme Court upheld the district court's determination that a 6–year–old witness was

competent to testify. The witness was able to report his name, his age, the street and city where he lived, his sister's name and age, his school and grade, the names of his teacher and principal, the name of his father's workplace, and his mother's occupation. He was also able to demonstrate that he understood the difference between telling the truth and lying.

In this case, A.S. was able to report much of the same information. A.S. accurately answered the court's questions regarding her age, her school, and her grade in school, and she was able to state that she lived with her mother and brothers. However, she was not able to recall exactly where she lived. A.S. also reported that she knew what it meant to tell the truth and that she could get a timeout if she told a lie. At the court's direction, A.S. also raised her hand and promised to tell the truth. In front of the jury, A.S. also answered the judge that his robe was black and that his statement that his robe was pink would be a lie.

Vance does not take issue with any of the above facts, but focuses on A.S.'s inability to remember all of the details of her experiences with Vance. However, A.S.'s inability to accurately remember and narrate certain events does not go to her competency. Rather, these are credibility issues for the jury to consider. Based on this record, we agree with the district court's determination that A.S. was competent to testify.

*State v. Vance*, 2015 WL 240854 at \*6-7; filing no. [10-11 at CM/ECF pp. 7](#)-8.

As for the "unavailability for cross-examination" issue, the Court of Appeals wrote:

After Amanda's [the mother] testimony, Vance moved to strike A.S.'s testimony because he argued that she was unavailable for cross-examination. Vance emphasizes that A.S.'s frequent responses of "I can't remember" or "I don't know" to his questions on cross-examination demonstrate her unavailability. A.S. was unable to recall what she had stated during her interviews at the Child Advocacy Center and, due to her age, was not able to read the transcripts from those interviews. On appeal, Vance contends that the district court

abused its discretion when it overruled his motion to strike.

Vance and the State both agree that this issue is properly analyzed under the U.S. Supreme Court's decision in *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). Neither party cites a Nebraska case applying that decision, and we have not found any such case in our research. In *Owens*, the government charged a federal prisoner with assault of a prison counselor. The prisoner beat the counselor with a metal pipe, fracturing the counselor's skull. The counselor was hospitalized for over a month, and his memory was impaired as a result of the beating. Four weeks after the assault, the counselor was able to describe what occurred and identified the prisoner as his attacker from an array of photographs.

At trial, the counselor testified that he remembered identifying the prisoner as the attacker. However, he was not able to recall many other details. On cross-examination, the prisoner's attorney attempted to refresh the counselor's recollection with hospital records, including a record in which the counselor had identified a different attacker. These attempts were unsuccessful, and the prisoner was convicted.

The U.S. Supreme Court reversed the federal court of appeals decision overturning the conviction. The Supreme Court held that the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. When the defense has the opportunity to bring out such matters as the witness' bias, lack of care and attentiveness, poor eyesight, or bad memory, the Confrontation Clause is satisfied.

Vance argues that he did not have the opportunity to cross-examine A.S. because she had no true recollection of the abuse. He focuses on the fact that A.S. testified that she was talking about things that had been told to her. However, our review of the record shows that A.S. testified to her actual memory of Vance's putting his "pee pee in her butt" while she was living in the old house. A.S. also testified that it hurt when Vance put his fingers in her "toki."

> The record also shows that Vance had the opportunity to cross-examine A.S. and highlight before the jury her lack of memory of many details. Vance then argued in his closing that A.S.'s inability to recall many details should make her testimony unbelievable. Although he was not able to achieve his desired result, he was able to cross-examine A.S. The district court correctly overruled Vance's motion to strike A.S.'s testimony.

*Id.* at *7-8; filing no. 10-11 at CM/ECF pp. 8-9.

As for the alleged hearsay statements of the child, the Court of Appeals reasoned:

> Vance assigns as error the district court's determination that Amanda was allowed to testify to A.S.'s statement which led to their visit to the hospital. Specifically, Vance argues that Amanda should not have been permitted to testify as to H.S.'s initial statement which led to her questioning of A.S. Vance also argues that Amanda could not testify to A.S.'s answers in response to her questions. Vance focuses his arguments on the complaint of rape rule and argues that this doctrine should be abandoned. Under the complaint of rape rule, the victim of a sexual assault may testify to a complaint regarding a sexual assault made within a reasonable time after it occurs, but not as to the details of the complaint. *See*, *State v. Ford*, 279 Neb. 453, 778 N.W.2d 473 (2010); *State v. Daniels*, 222 Neb. 850, 388 N.W.2d 446 (1986).
>
> In response to Vance's hearsay objection at trial, the State offered two responses. First, the State declared that it was not offering H.S.'s statement for the truth of the matter asserted. The State claimed that H.S.'s statement was not hearsay because it was being offered to show why A.S. was taken to the hospital. Further, the State claimed that the complaint of rape doctrine would allow Amanda to testify to A.S.'s response to Amanda's questioning. When questioned in front of the jury, Amanda testified that H.S. made a statement which led her to question A.S. Then, A.S. responded "yes" to her question of whether someone had put a "pee pee in her butt." Upon Vance's hearsay objection, the court overruled the objection and gave the following instruction to the

jury:

> All right, ladies and gentlemen of the jury, this questioning where [A.S.] made a statement to the witness; and that [H.S.] said something; and then [A.S.] was asked a question; and her responses; all of those are not being received for the truth of the matter asserted therein. They're simply being received for the fact that the statements were made. In other words, they're not substantive evidence, but you can consider the fact that the statements were made, but not the truth of the matter asserted therein.

Vance's objection at trial to Amanda's testimony regarding what A.S. and H.S. told her was based on hearsay. The trial court found that these statements were not hearsay as they were not offered for the truth of the matter asserted. We agree. These statements were offered to show why Amanda took A.S. to the hospital for an evaluation. The trial court also instructed the jury that these statements were being received only for the fact that they were made and not for their substance. We find no abuse of discretion in the court's overruling of Vance's hearsay objection to Amanda's testimony regarding what A.S. and H.S. told her. We need not discuss the complaint of rape doctrine and its applicability in this case. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Planck*, 289 Neb. 510, 856 N.W.2d 112 (2014).

*Id.* at * 8-9; filing no. 10-11 at CM/ECF pp. 9-10.

The careful analysis of the Nebraska Court of Appeals regarding the foregoing issues was also evident when the court examined the question of whether the evidence was sufficient. The Court of Appeals stated:

A person commits first degree sexual assault of a child if he or she subjects another person under 12 years of age to sexual penetration and the actor is at least 19 years of age or older. Neb.Rev.Stat. § 28–319.01 (Cum.Supp.2014). Neb.Rev.Stat. § 28–318(6) (Cum.Supp. 2014) defines sexual penetration as sexual intercourse in its ordinary meaning,

cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen.

It is not necessary that the vagina be entered or that the hymen be ruptured; the entry of the vulva or labia is sufficient. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

A person commits third degree sexual assault of a child if he or she subjects another person 14 years of age or younger to sexual contact and the actor is at least 19 years of age or older and does not cause serious personal injury to the victim. See Neb.Rev.Stat. § 28–320.01(1) and (3) (Reissue 2008).

Vance's arguments on appeal regarding the sufficiency of the evidence to sustain his convictions were presented to the jury at trial and rejected. Vance argues that A.S.'s testimony was not believable and that the DNA evidence likely was deposited on A.S.'s bedding while he was having sexual encounters with Amanda. However, this court does not reweigh the evidence, resolve conflicts in the evidence, or weigh the credibility of witnesses. *See State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014).

Having reviewed the record, we conclude there was sufficient evidence for the jury to find Vance guilty of both first and third degree sexual assault. This assigned error is without merit.

*Id.* at * 9-10; filing no. 10-11 at CM/ECF pp. 10-11.

A petition for further review was filed. Filing no. 10-1 at CM/ECF p. 3. However, it was denied. *Id.* The petition for further review preserved three claims. Summarized, they were: (1) the Court of Appeals erred by permitting the prosecution to call the victim to testify as she was not competent; (2) the Court of Appeals erred by permitting the prosecution to introduce hearsay statements of the alleged victim to her mother; and (3) the Court of Appeals erred in finding the evidence was sufficient

to sustain the conviction. Filing no. 10-4 at CM/ECF pp. 1-2.

## *Post-Conviction Litigation*

Petitioner filed a post-conviction action. In his post-conviction pleading, Vance alleged fourteen claims of ineffective assistance of counsel: (1) failure to properly and adequately advise him as to his rights under the state and federal constitutions; (2) failure to raise all issues and claims on direct appeal; (3) failure to present expert testimony on his behalf; (4) failure to offer a meaningful defense; (5) failure to gather relevant evidence; (6) failure to request a hearing or object to jury misconduct; (7) failure to object to improper jury instructions; (8) failure to have independent DNA testing done; (9) failure to object to false testimony; (10) failure to move for a mistrial or dismissal of the case; (11) failure to provide discovery material to him; (12) failure to properly investigate the allegations; (13) failure to object to the form of the information; and (14) failure to object to the verdict forms. Vance also alleged two additional claims that (1) the prosecution knowingly admitted false testimony at trial, and (2) the trial judge's actions constituted judicial misconduct.

The state post-conviction judge, who was also the trial judge, denied the request for relief in a detailed 13-page opinion. Filing no. 10-12 at CM/ECF pp. 74-86. As for the ineffective assistance of counsel claims, the judge found that there were insufficient allegations of fact to warrant an evidentiary hearing on the claims. He held that Vance "has presented no factual allegations that but for counsel's ineffective assistance there is a reasonable probability the outcome would have been different. *Id.* at CM/ECF p. 85.

As for the prosecutorial misconduct allegations, the judge held that Vance failed to "point to specific actions by the prosecutor or testimony on the record" sufficient to show that the prosecutor knowingly used false testimony. *Id.* As for the allegation of judicial misconduct–that the trial judge improperly handled jury misconduct and overruled the motion for mistrial on that same issue–the judge held that the issue was

raised on direct appeal and could not be raised again. *Id.* at CM/ECF pp. 84-85.

Petitioner appealed. He argued that the post-conviction court erred by (1) failing to appoint counsel and schedule an evidentiary hearing; and (2) determining that Vance has alleged only conclusions of law and fact. Filing no. 10-14 at CM/ECF p. 6. In his brief, Vance concentrated on his ineffective assistance of counsel claims and abandoned the prosecutorial and judicial misconduct allegations. Filing no. 10-14 at CM/ECF pp. 1-14.

On December 26, 2017, the Court of Appeals denied the appeal. (Filing no. 10-18.) It agreed with the post-conviction court that Vance had only alleged conclusions of law and fact regarding all but perhaps one of the ineffective assistance of counsel claims and the same was true for the prosecutorial and judicial misconduct claims. The Court of Appeals stated:

> Vance assigns the district court erred in finding his second verified amended motion for postconviction relief contained only conclusions of law and fact regarding his ineffective assistance of counsel claims. On appeal, Vance's argument centers on his sixth ineffective assistance of counsel claim: that counsel was ineffective in failing to request a hearing or object to juror misconduct. Vance only mentions the remaining thirteen claims of ineffective assistance of counsel to generally assert that these claims presented "justiciable issues of law and fact." Brief of Appellant at 9. Similarly, Vance makes no argument regarding the two additional claims of prosecutorial and judicial misconduct. Because Vance did not argue these claims, we will not consider them further.

Filing no. 10-18 at CM/ECF p. 5-6.

After setting forth the *Strickland* standard for review of ineffective assistance of counsel claims, the Court of Appeals addressed the one claim of ineffective assistance of counsel upon which Vance "centered" his argument. The Court of Appeals stated:

-11-

> Here, Vance does not allege sufficient facts to show that his trial counsel's performance was deficient or that his counsel's deficient performance prejudiced his defense. Vance claims that the victim's mother came in contact with a juror during a recess and that his trial counsel should have requested an evidentiary hearing to determine the content and "magnitude" of the contact. He contends that his trial counsel's failure to do so "fell below the standard of training and skill displayed by competent lawyers practicing in the area." However, Vance does not allege that his trial counsel knew the juror spoke with the victim's mother at the time it allegedly occurred, or that any communication between the mother and the juror involved improper or prejudicial matters. As such, he has failed to allege sufficient facts to show deficient performance. Further, Vance does not allege a reasonable probability that the result of the proceeding would have been different had his trial counsel requested a hearing.

*Id.* at CM/ECF pp. 7-8.

Vance filed a petition for further review with the Nebraska Supreme Court on February 20, 2018. *Critically*, it was denied (filing no. [10-13 at CM/ECF p. 2](#)) as being untimely pursuant to [Neb. Ct. R. App. P. § 2-102(F)(1)](#) ("An original and one copy of a petition for further review and memorandum brief in support must be filed within 30 days after the release of the opinion of the Court of Appeals or the entry of the order of the Court of Appeals finally disposing of the appeal, whichever occurs later.").

### *Law of Procedural Default and Deference*

In brief outline form, here is (a) the law on procedural default as it pertains to the history of this case and (b) the law regarding the deference I must give the decisions of the state courts in this case:

1. 28 U.S.C. § 2254 requires a Petitioner to exhaust his claims in the state courts before coming to federal court.

2. A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, then in an appeal to the Nebraska Court of Appeals, and finally in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

3. "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

4. Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

5. To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

6. Under Nebraska law, you generally only get one post-conviction review; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.")

7. When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases

despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

8. With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

9. As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

### *Analysis*

Claims One and Two raise ineffective assistance of counsel claims. Claims One and Two are reproduced below:

CLAIM ONE: Ineffective Assistance of Counsel claim. "Public defender did not administer depositions as I pleaded he do, did not preserve the

secrets I divulged about specifics of this case, did not bring up the fact the prosecutor and state's witness were seen numerous times riding on elevator with jurors from my panel, did not add all issues I wrote to him in the direct appeal."

CLAIM TWO: Ineffective Assistance of Counsel claim. "My public defender did not investigate alternative suspects in DNA spot found on blanket, did not interview prosecution witnesses nor alleged victim, failed to investigate experts' opinions, failed to object to highly prejudicial statements made by prosecutor during opening statements, failed to examine state's 'key witness.'"

Filing no. 9 at CM/ECF pp. 1-2 (Initial Review Order[3]).

Since Vance had the same counsel at trial as on appeal, the post-conviction litigation was where any claim of ineffective assistance of counsel must have been presented. I turn to that segment of the procedural history next.

Assuming for the sake of argument the doubtful proposition that some or all of these claims were fairly presented in the post-conviction litigation, the failure of Vance to file a timely petition for further review regarding the Nebraska Court of Appeals' adverse decision on the post-conviction action means that these claims have not been presented in one complete round of review by the Nebraska courts. Since there is no available Nebraska remedy remaining, these claims have all been procedurally defaulted even assuming that they were fairly presented. There has been no sufficient showing of "cause" and "prejudice" or a "fundamental miscarriage of justice" sufficient to excuse the defaults. Thus, they have been procedurally defaulted.

I turn next to Claim Three. It states:

CLAIM THREE: Judicial Misconduct (a Due Process of Law) claim.

---

[3] At initial review, rather than attempt to summarize Petitioner's claims, I quoted him. I reproduce the claims verbatim as stated in the order on initial review.

> "Allowing hearsay statements, allowed alleged victim to continue testimony although they stated they did not know undesirable consequences could follow from telling an untruth, allowed jury instruction #9 even though constitutionally defective, allowing a jury conviction without evidence to back it up."

Filing no. 9 at CM/ECF p. 2.

The portion of Claim Three dealing with jury instruction number 9, to the extent it constitutes a federal claim at all, was never presented to the state courts. It is procedurally defaulted and no excuse has been provided that would permit me to overlook the default.

On the other hand, I disagree with the Respondent that the remainder of Claim Three has also been procedurally defaulted. In my view, the essence of the remainder of Claim Three was presented on direct appeal to the Nebraska Court of Appeals in assignments of error (3)–allowing the victim to testify when she was not competent; (4)–failing to strike the testimony of the victim when she became unavailable for cross-examination (because of her incompetency as evidenced by her failure to remember certain details); (5)–permitting the State to introduce the hearsay statement of the victim; and (7)–finding sufficient evidence to sustain the jury's verdicts. And, it should be remembered that a petition for further review to the Nebraska Supreme was presented as required to avoid a procedural default of the claims raised on direct appeal.

Turning to the guts of the petition for further review, the gist of the foregoing described assignments of error presented to the Court of Appeals on direct appeal and the portion of Claim Three in this court described above were preserved in the petition for further review presented to the Nebraska Supreme Court. Filing no. 10-4 at CM/ECF pp. 1-2. That is, the petition alleged that (1) the Court of Appeals erred by permitting the prosecution to call the alleged victim to testify as she was not competent; (2) the Court of Appeals erred by permitting the prosecution to introduce

-17-

hearsay statements of the alleged victim to her mother; and (3) the Court of Appeals erred in finding the evidence was sufficient to sustain the conviction. Filing no. 10-4 at CM/ECF pp. 1-2.

While Claim Three does not use the words of the assignments of error presented on direct appeal or use the words of the petition for further review, a habeas claim need not present an "exact duplicate" of one raised in the state proceedings. *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006); *Odem v. Hopkins*, 192 F.3d 772, 776 (8th Cir.1999). I believe that Claim Three presents essentially the same factual and legal bases raised on direct appeal and in the petition for further review, although, to be sure, the pro se phrasing of Claim Three is not artful.

Even though I conclude that the bulk of Claim Three was exhausted and not procedurally defaulted, this ruling provides no relief to Vance. The decision of the Nebraska Court of Appeals was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Moreover, I cannot say that the reasoning of the Nebraska Court of Appeals on direct appeal "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This is especially true since a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not done so.

I am not insensitive to the fact that Vance was convicted in large measure on the testimony of young child who first denied any abuse. The Nebraska Court of Appeals was not insensitive to that matter either. The Nebraska Court of Appeals approached this case fully, carefully and honestly. Under federal law, this is not a case where I am authorized to substitute my judgment for that of the jury or the Nebraska

Court of Appeals. *See, e.g., Pouncil v. Nelson*, 123 F. App'x 348, 353 (10th Cir. 2005) (denying a certificate of appealability in a habeas case challenging the Petitioner's conviction for the rape of two girls ages 6 and 4; stating: "A fact finder's verdict does not violate a defendant's due process rights if 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

I turn next to Claim Four. It states:

CLAIM FOUR: Prosecutorial Misconduct (a Due Process of Law) claim. "Rode in elevator with potential jurors during voir dire and also during deliberations (2 days), and instructed alleged victim what to say."

Filing no. 9 at CM/ECF p. 2.

This claim has clearly been procedurally defaulted. There has been no excuse shown.

### *No Certificate of Appealability*

Finally, a petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that the petition for writ of habeas corpus (filing no. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. A separate judgment will be entered.

DATED this 11th day of March, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge